[No. 23600-8-I. Division One. October 8, 1990.]

THE STATE OF WASHINGTON, *Respondent*, v. RICHARD JOSEPH DUNBAR, *Appellant*.

---

*Eric Nielsen* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Donna L. Wise, Senior Appellate Attorney,* and *Kelly Thomas, Deputy,* for respondent.

GROSSE, A.C.J.—Richard Dunbar (Dunbar) appeals the trial court's calculation of his offender score and sentence imposed on his convictions for one count each of burglary in the first degree and kidnapping in the first degree.

The facts of the incident were not contested at trial. On June 24, 1988, Dunbar took a hunting knife and broke into the house of his former girl friend. He waited for her to come home, and when she returned, attacked her, wrestled her to the floor, tied her up, and carried her to the trunk of her car.

Dunbar drove the car toward Olympia and stopped several times, opening the trunk and stating to the victim that he hoped she did not think he would let her out. He would then shut the trunk and drive on. Eventually, the victim was able to untie herself and she attempted to kick out the section separating the trunk and the backseat. Dunbar again stopped the car and placed himself on the backseat to prevent the victim from freeing herself. He repeatedly told her he would let her out, but then did not. Throughout this ordeal Dunbar kept telling the victim that he wanted to die and told her that he would let her out of the trunk if she promised to stab him. When she finally promised to do so, he let her out and she was able to talk him into letting her drive them back to Seattle. When they neared his house, Dunbar made the victim let him out of the car and he ran away.

Dunbar was charged by amended information with burglary in the first degree under RCW 9A.52.020[1] and first degree kidnapping under RCW 9A.40.020(1)(d).[2] At trial, he did nòt deny he committed the acts, but claimed he was unable to form the requisite intent for the crimes because of his borderline personality disorder and his excessive use of steroids. The jury found him guilty of both crimes.

In calculating his offender score, the trial court found the crimes were not the same course of conduct. It reasoned that the burglary was completed when Dunbar broke into the house and assaulted the victim, and it refused to adopt Dunbar's subjective view that he may have broken into the victim's house to kidnap her.

Pursuant to RCW 9.94A.400(1)(a), when a person is convicted of two or more crimes they are each counted separately to determine the offender score and the standard range for sentencing, except:

> [I]f the court enters a finding that some or all of the current offenses encompass the same criminal conduct then those current offenses shall be counted as one crime. Sentences imposed under this subsection shall be served concurrently. . . . "Same criminal conduct," as used in this subsection, means two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim . . . .

The Legislature added the definition of "same criminal conduct" in 1987. Laws of 1987, ch. 456, § 5. In *State v. Collicott,* 112 Wn.2d 399, 771 P.2d 1137 (1989), the majority treated this language as consistent with the signal case

---

[1]RCW 9A.52.020 provides:

**"Burglary in the first degree.** (1) A person is guilty of burglary in the first degree if, with intent to commit a crime against a person or property therein, he enters or remains unlawfully in a dwelling and if, in entering or while in the dwelling or in immediate flight therefrom, the actor or another participant in the crime (a) is armed with a deadly weapon, or (b) assaults any person therein."

[2]RCW 9A.40.020 provides in pertinent part:

**"Kidnapping in the first degree.** (1) A person is guilty of kidnapping in the first degree if he intentionally abducts another person with intent:

" . . . .

"(d) To inflict extreme mental distress on him or a third person; . . .".

interpreting the prior statute, *State v. Dunaway*, 109 Wn.2d 207, 743 P.2d 1237, 749 P.2d 160 (1987). *See Collicott*, 112 Wn.2d at 411.

■ In *Dunaway*, the Supreme Court delineated an objective intent test to determine if two crimes constituted the same course of conduct for sentencing purposes. *Dunaway*, 109 Wn.2d at 213.

> Therefore, in deciding if crimes encompassed the same criminal conduct, trial courts should focus on the extent to which the criminal intent, as objectively viewed, changed from one crime to the next. As it did in [*State v.*] *Edwards*, [45 Wn. App. 378, 725 P.2d 442 (1986)], part of this analysis will often include the related issues of whether one crime furthered the other and if the time and place of the two crimes remained the same. *See Edwards*, at 382.

*Dunaway*, 109 Wn.2d at 215. The court held that crimes involving multiple victims should be counted separately, thus carving out an exception to the general rule. *Dunaway*, 109 Wn.2d at 215.

The court applied this objective intent test to each of the three cases consolidated in *Dunaway*. In two of the cases, the defendants committed armed robberies and then attempted to murder the victims. Rather than accept the defendants' subjective view that they tried to kill the victims to avoid being arrested for the robberies, the court determined the objective intent of each crime was separate and that neither crime furthered the other. Thus, they could not constitute the same course of conduct.

In the third case, the defendant abducted two women in order to rob them. The court found that the objective intent of both crimes was to rob the women and that the abductions furthered the robberies. In fact, the robbery was the basis for the prosecutor to raise the charge from second degree to first degree kidnapping.[3] This connection be-

---

[3]Unlike the first degree kidnapping charge in this case, the defendant in *Dunaway* was charged pursuant to RCW 9A.40.020(1)(b), which reads:

"(1) A person is guilty of kidnapping in the first degree if he intentionally abducts another person with intent:

tween the separate crimes—because one enhanced another—was expanded in *Collicott*.

The defendant in *Collicott* broke into a counseling center intending only to take property. When he encountered a woman at the center he assaulted her, ordered her to give him her car keys and her money, and loaded stolen property from the center into her car. After loading the car, Collicott returned to the center, raped the woman, and abducted her in the car. He was charged and convicted of first degree burglary, first degree rape, and first degree kidnapping. All of the charges were connected in the information. The burglary was enhanced to first degree based on the assault and the rape. The burglary and the subsequent kidnapping provided the forcible compulsion necessary for the rape charge. The kidnapping charge was premised on the facilitation of the burglary and rape or flight therefrom. Five members of the Supreme Court concurred in a decision that reversed a decision of this court that found that these crimes did not constitute the same criminal conduct.[4]

In a decision in which three Justices concurred, Justice Utter reviewed the *Dunaway* objective intent analysis, but extended it to include a parallel inquiry:

> When accompanying offenses depend on each other to obtain a higher degree for each one, they are "intimately related or connected" enough to be viewed as the same criminal conduct. This principle is called "element sharing."
> The element sharing inquiry reveals the need for logical charging and sentencing relationships. It would be incongruous for a prosecutor, at charging, to look to accompanying offenses

---

"  . . . .
"(b) To facilitate commission of any felony or flight thereafter; . . .".

[4]The Court of Appeals held that the burglary and rape involved different victims and different criminal intents. Since the burglary was completed when the defendant loaded the stolen property into his car, this court reasoned his objective criminal intent changed when he returned to the building and raped the woman. The court's review of the burglary and kidnapping charges followed the same analysis, focusing on the different victims and intents. Finally, the Court of Appeals refused to adopt Collicott's subjective view that the kidnapping facilitated his escape and determined that the rape, which was completed before the kidnapping occurred, had a different objective intent from the kidnapping.

in order to raise a specific offense to a higher degree and then, at sentencing, argue that the specific offense is indeed separate from the accompanying ones used to raise that offense. Such a strategy would in effect punish the defendant twice.

Prosecutors have a choice in their initial charging decision. They may choose to charge some offenses under a lesser degree in order to separate them from other offenses for sentencing purposes. Or, they may choose to seek the higher degree of offense and openly acknowledge the offense's dependence on accompanying offenses to obtain that higher degree. They cannot, however, do both.

*Collicott*, 112 Wn.2d at 406–07. Applying this inquiry to the facts, Justice Utter believed the charges so inextricably intertwined as to defy any distinction between the objective intent and theoretical purpose of each. Insofar as the burglary was concerned he stated:

Looking at it from the perspective of objective intent and theoretical purpose, the two offenses here are even more closely connected. The purpose behind burglary is to enter a building or dwelling illegally in order to commit further criminal acts. Those further acts will be offenses in themselves, but they are still part of the burglary. Therefore, we cannot say, as the Court of Appeals did, that the burglary in this case was "completed" before the petitioner raped the victim.

*Collicott*, 112 Wn.2d at 408. In terms of the problem of separate victims for the burglary and the other two crimes, Justice Utter again believed the issue was subsumed by the charging decision that focused on the other two crimes to raise the burglary charge to the first degree.

■■ There are several observations to be made with regard to *Collicott* as it relates to this case. First, we are constrained to give the case the narrowest reading possible due to the lack of a clear majority supporting the rationale. *Lakewood v. Plain Dealer Pub'g Co.*, 486 U.S. 750, 100 L. Ed. 2d 771, 108 S. Ct. 2138, 2148 n.9 (1988); *Southcenter Joint Venture v. National Democratic Policy Comm.*, 113 Wn.2d 413, 427–28, 780 P.2d 1282 (1989). Second, a narrow reading requires that the element sharing principle be applied only to circumstances such as those in *Collicott* where the charging scheme creates an interdependency

between the charged crimes. The present case is distinguishable in that here there is no clear demonstration of a charging scheme that made each crime's degree dependent on the other. Third, we need not decide this case based on *Collicott* because a *Dunaway* analysis of the objective intent of the two crimes demonstrates that the trial court's sentence was erroneous.

Unlike the kidnapping charge in *Collicott*, the burglary charge here does not include another charge (*i.e.*, the kidnapping charge) as an element. In the amended information Dunbar was charged as follows:

> That the defendant, Richard Joseph Dunbar, in King County, Washington, during a time intervening the 24th day of June, 1988, did enter and remain unlawfully in the dwelling of [the victim] with intent to commit a crime against [the victim], and while in such dwelling and in immediate flight therefrom, the defendant was armed with a deadly weapon and assaulted [the victim].
>
> . . . .
> That the defendant, Richard Dunbar, in King County, Washington, on or about the 25th day of June, 1988, with intent to inflict extreme mental distress on [the victim], did intentionally abduct [the victim], a human being.

Based on the information, the burglary and kidnapping do not fit the element sharing principle since neither crime incorporated the other offense.

Dunbar attempts to connect the burglary and the kidnapping by discussing the objective intent of the assault, arguing that it was an essential element of both charges. We cannot agree that it was an element of both, at least not in terms of the *Collicott* shared element analysis. The charge for first degree burglary did not specifically identify the kidnapping as the underlying crime and thus as one of the elements. The kidnapping did not have the assault as one of its elements. At best, the assault was an element only of the burglary charge. Although it may well have been a common factor in both crimes, that commonality is not an aspect of "element sharing". Rather, it is a factor that must be taken into account in analyzing the issue under *Dunaway* in terms of objective intent. *Cf. State v. Davison*, 56

Wn. App. 554, 784 P.2d 1268 (1990) (refusing to find same criminal conduct in a prosecution for first degree burglary referencing assault and assault where the defendant had assaulted two persons during the burglary and the separate assault count was with respect to only one of them).

In addition to the objective intent factor, *Dunaway* identified two other factors that must be considered in the analysis: Whether the crimes occurred at the same time and place and whether one crime furthered the other. Dunbar argues that the crimes were committed at the same time and place and involved the same victim. We are constrained to agree and to find that the burglary furthered the kidnapping in that the assault was one of the means of accomplishing the abduction. *See State v. Collins*, 110 Wn.2d 253, 751 P.2d 837 (1988).[5] While Dunbar's purpose may have changed from one crime to the other, his objective intent in committing the burglary was to commit some crime, one of which was the assault. In addition, the burglary furthered the kidnapping by means of the assault. Although the kidnapping was a continuing crime, its essential element, an abduction, did occur at the same time and place as the burglary. On balance, we hold that the two crimes encompass the same criminal conduct. Thus, the trial court erred and this matter must be remanded for resentencing.

As the dissent indicates, application of the burglary antimerger statute, RCW 9A.52.050, would lead to the opposite conclusion in this case, and in all other cases in which burglary is one of the crimes charged. The dissent's reason for applying this statute is flawed in two respects. First, the antimerger statute and the Sentencing Reform Act of 1981 (SRA) do not necessarily conflict. Second, the results in both *Collicott* and *Collins* necessarily subsume

---

[5]In *Collins*, the defendant raped and assaulted the residents of a house after they let him in to use the telephone. The court found Collins' objective intent was to commit the rape and the assault and that the burglary furthered those crimes. Further, the crimes were all committed at the same time and the same place.

that lack of conflict because both found a burglary encompasses the same criminal conduct as other crimes committed at the same time and place.

With regard to the first flaw, as the dissent recognizes, the one and perhaps the only crime to which the SRA provision regarding same criminal conduct was intended to apply was burglary. *See* D. Boerner, *Sentencing in Washington* § 5.8(a) (1985), cited in the dissent. It is also evident that the SRA has a different purpose than that behind the criminal code. *Compare* RCW 9.94A.010 *with* RCW 9A.04-.020. The purpose of the latter is criminal responsibility for the class of crimes proscribed. The purpose of the former is individual responsibility for the crime committed. The Supreme Court has previously recognized this difference. *See State v. Davis,* 101 Wn.2d 654, 658, 682 P.2d 883 (1984); *State v. Bilal,* 54 Wn. App. 778, 785, 776 P.2d 153, *review denied,* 113 Wn.2d 1020 (1989). With that in mind we believe the two acts can be read together to avoid conflict. In fact, it is the responsibility of courts in construing statutes to do just that. *See State v. S.P.,* 110 Wn.2d 886, 890, 756 P.2d 1315 (1988). The two statutes can be harmonized by construing the antimerger statute in light of the SRA and limiting the antimerger statute to criminal responsibility. Thus, the antimerger statute permits a burglary and the underlying crime to both be charged despite the doctrine of merger.

The antimerger statute's permissive "may" supports this result. *See Issel v. State,* 39 Wn. App. 485, 487, 694 P.2d 34 (1984). RCW 9A.52.050 does not mandate punishment for the underlying crime, but merely authorizes the separate prosecution of, and punishment for, the underlying crime despite the merger doctrine. This reading of the statute avoids any conflict with the provisions of RCW 9.94A-.400(1)(a), and thus, if the crimes do not encompass the same criminal conduct, the defendant may be punished for both.

With regard to the second flaw in the dissent, the Supreme Court's decisions in *Collicott* and *Collins* held

that a burglary and the underlying crimes constituted the "same criminal conduct" for sentencing purposes. In *Collicott,* the Supreme Court relied on the absence of any references to merger in the previous and present versions of RCW 9.94A.400(1)(a) to conclude that the statute was to function independently from the merger doctrine. The same rationale would apply to the antimerger statute as well. Since both the previous and present versions of the statute failed to refer to the antimerger statute, it must also function independently of RCW 9.94A.400(1)(a). Accordingly, we find that the antimerger statute does not preclude a finding that the burglary and kidnapping constitute the same criminal conduct. This holding is consistent with the result reached in both *Collicott* and *Collins.*

We reverse and remand for resentencing.

BAKER, J., concurs.

FORREST, J. (dissenting)—I dissent. For the reasons given in *State v. Lessley,* 59 Wn. App. 461, 798 P.2d 302 (1990), I believe the burglary antimerger statute (RCW 9A.52.050) applies and Mr. Dunbar should be punished for both the burglary and the kidnapping.[6] The majority rejects application of the antimerger statute for two reasons.

First, the majority states that the antimerger statute does not conflict with the "same criminal conduct" portion

---

[6]As stated in *State v. Lessley, supra* at 464–65:
"Arguably, the burglary antimerger statute conflicts with RCW 9.94A.400(1)(a) and has been repealed by implication. When two statutes appear to conflict, every effort should be made to harmonize their respective provisions. Here, that is easily done by recognizing that application of the burglary antimerger statute is discretionary with the sentencing judge and permits punishment for burglary and other crimes simultaneously committed. This result accords with the well-established rules that the more specific statute controls over a conflicting, more general statute, and that the Legislature is presumed to be familiar with its prior legislation. In this case, then, the antimerger statute controls over the general language as to 'same criminal conduct' when the sentencing judge imposes punishment pursuant to RCW 9A.52.050. Repeals by implication are not favored. If repeal is appropriate, it should be done by the Legislature, not by the courts." (Footnotes omitted.)

of the Sentencing Reform Act of 1981 (RCW 9.94A-.400(1)(a)). The antimerger statute would permit the sentencing judge to punish Mr. Dunbar for the kidnapping.[7] The majority interprets the Sentencing Reform Act of 1981 (SRA) to say he cannot. This analysis creates a conflict between the statutes. The majority argues that there is no conflict because the purposes behind the SRA and the criminal code are different.

According to the majority, the purpose of the criminal code is to promote criminal responsibility for the class of crimes proscribed, while the purpose of the SRA is to promote individual responsibility for the crimes committed. Majority, at 456.[8] I find this distinction unclear and unpersuasive.[9] However, accepting the majority's interpretation

---

[7] RCW 9A.52.050 states:

"Every person who, in the commission of a burglary shall commit any other crime, may be punished therefor as well as for the burglary, and may be prosecuted for each crime separately."

[8] In support of this proposition, the majority cites *State v. Davis*, 101 Wn.2d 654, 658, 682 P.2d 883 (1984) and *State v. Bilal*, 54 Wn. App. 778, 785, 776 P.2d 153, *review denied*, 113 Wn.2d 1020 (1989). These cases deal with the relationship between accomplice liability where the principal is armed as defined in the criminal code and the provisions in the SRA for enhancement of sentence for being armed. The cases do not support the majority's sweeping proposition.

[9] Under RCW 9.94A.010, the purposes of the SRA are to:

"(1) Ensure that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history;

"(2) Promote respect for the law by providing punishment which is just;

"(3) Be commensurate with the punishment imposed on others committing similar offenses;

"(4) Protect the public;

"(5) Offer the offender an opportunity to improve him or herself; and

"(6) Make frugal use of the state's resources."

RCW 9A.04.020(1) defines the purposes of the Washington Criminal Code as follows:

"(a) To forbid and prevent conduct that inflicts or threatens substantial harm to individual or public interest;

"(b) To safeguard conduct that is without culpability from condemnation as criminal;

"(c) To give fair warning of the nature of the conduct declared to constitute an offense;

of the purpose behind the SRA, I find it a very strange kind of "responsibility" that permits punishment of Mr. Dunbar for the kidnapping, yet proscribes punishment for the burglary of which he has been duly convicted by a jury. Similarly, accepting the majority's interpretation of the purpose underlying the criminal code, its view eviscerates the promotion of "criminal responsibility" by eliminating the adverse consequences of the defendant's burglary. This analysis conflicts with the antimerger statute which states that the defendant may be *punished.*

Interpreting the SRA to prohibit punishment for the burglary and the kidnapping in this case frustrates a major purpose of the legislation.[10] As Professor Boerner states:

> The first and overriding principle shaping the [Sentencing Reform] Act is retribution, or just deserts. The Washington Supreme Court correctly assessed the Legislature's intent when it said of the Sentencing Reform Act, "Punishment is the paramount purpose." . . . Proportionality between crime and punishment is fundamental to this principle, and its placement as the first stated purpose is significant. Proportionality operates to establish the core principle upon which the structure of sentencing under the Sentencing Reform Act is based.

(Footnotes omitted.) D. Boerner, *Sentencing in Washington* § 2.5(a), at 2–31 (1985).[11]

To give Mr. Dunbar the same punishment under these circumstances as he would have received if he had committed the first degree kidnapping and never engaged in the burglary is not proportionate treatment. Other than a small overlap in time, these crimes share little in common. Legally, the burglary herein was committed before the kidnapping commenced, although factually, as the majority

---

"(d) To differentiate on reasonable grounds between serious and minor offenses, and to prescribe proportionate penalties for each."

[10]*See* RCW 9.94A.010(1).

[11]The majority cites Professor Boerner's treatise for the proposition that "the one and perhaps the only crime to which the SRA provision regarding same criminal conduct was intended to apply was burglary." Majority, at 456. I do not agree. *See Lessley, supra* at 464 n.6.

notes, the kidnapping began while the burglary was still in progress. However, the majority of the time the defendant restrained the victim and, more significantly, the infliction upon the victim of extreme mental distress, which elevated the kidnapping from second to first degree, occurred at a different time and place. Indeed, if the kidnapping and burglary are encompassed in the same criminal conduct for purposes of sentencing as the majority holds, it would be logical to hold that either one could properly be considered an aggravating circumstance justifying an exceptional sentence.[12] In view of the striking similarity of the offenses at issue in *Lessley* and the offenses at issue here, the different sentencing result reached by the majority does not fulfill the purposes of the SRA.

Second, the majority contends that *State v. Collicott*[13] and *State v. Collins*[14] have established a binding general rule that a burglary includes as the same criminal conduct the other crimes committed at or about the same time and place. There is language supporting that view.[15] However, as the majority notes, *Collicott* should be read narrowly to apply to cases where the charging document relates the crimes and uses one to elevate the other to a higher degree. *Collins* clearly treated the burglary, rape and assault therein as the same criminal conduct on the facts presented. However, the antimerger statute gives the sentencing judge discretion to punish for burglary; it uses "may", not "shall".[16] Therefore, it would not be inconsistent to restrict *Collins* to its facts and hold that in the instant case, both crimes could be punished pursuant to the antimerger statute. Absent specific language so holding, I remain

---

[12]*See* RCW 9.94A.120(2).

[13]112 Wn.2d 399, 771 P.2d 1137 (1989).

[14]110 Wn.2d 253, 751 P.2d 837 (1988).

[15]*See Collicott,* at 408.

[16]RCW 9A.52.050.

unpersuaded that the SRA has repealed the burglary anti-merger statute by implication.

Here, the trial court determined that the burglary and kidnapping did not encompass the same criminal conduct. Great deference should be paid to that determination.[17] The different result reached by the majority on very similar facts in *Lessley* and *Dunbar* demonstrates that the issue is a close one. Pursuant to the antimerger statute, I would hold that the trial judge had the discretion to treat the burglary and kidnapping committed by Mr. Dunbar as separate criminal conduct and would affirm the sentence imposed.