[No. 24791-3-I.   Division One.   December 13, 1990.]

THE STATE OF WASHINGTON, *Respondent,* v. JAMES ROGER PITTMAN, *Appellant.*

*James E. Lobsenz* and *Carney, Stephenson, Badley, Smith & Spellman; Murray Guterson* and *Culp, Dwyer, Guterson & Grader,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Daniel Satterberg, Deputy,* for respondent.

PEKELIS, J.—James Roger Pittman appeals his sentence following his conviction for two counts of assault in the second degree. First, Pittman contends that the trial court erred in counting his two assault convictions as separate crimes for purposes of calculating his offender score. Second, he contends that the prosecutor's decision to charge two counts of assault, rather than one consolidated count, denied him equal protection.

I

Elaine S. Pittman and James Roger Pittman were divorced in June of 1986. On August 21, 1986, Elaine and a friend, Castor Herrera, spent most of the day at her property on the Lake Sammamish shore. At about 9 p.m., while they were packing Elaine's car, James and a friend, Sherry Oskam, drove onto the property in James' truck.

At trial, Elaine testified that James slammed on the brakes and parked a few inches from the back of her car.

Castor jumped out of the way to avoid being pinned between the two cars. Castor then climbed into the passenger seat and Elaine jumped into the driver's seat and locked the doors. James got out of his car, carrying a gun, and began screaming "I'm going to kill you." He then fired the gun at the ground by the right rear side of the car.

Elaine attempted to pull her car around the truck and leave. She then rolled her window partially down and told Sherry to get the police. According to Elaine, James then reached into the car, grabbed her hair and collar, put the gun up to her head and shouted "You goddam slut, I'm going to kill you." Elaine tried to get away and told James "Okay, I'm a slut, just let me go." James stepped back and shot the gun at the ground by the driver's door. Elaine rolled up the window and tried to drive away. James continued to run around the car and waive his gun.

Elaine testified that James then ran in front of the car and lay on the hood. He waved the gun back and forth pointing it at Elaine and Castor saying "I'm going to kill you both." James then shot the gun into the air over the top of the car. When he got off the hood, Elaine drove away. As she left she heard another shot.

According to Castor, James waved and pointed the gun "all over the place, you know, at her and me." Castor also testified that after James released Elaine, he "went to the front of the car and he was pointing [the gun] at both of us." Castor felt "terrified." Castor also testified that James fired two shots into the ground, one shot up into the air, and the other shot in an unknown direction as they were driving away. Castor stated that everyone was shouting at the same time, and he felt panicky.

At trial, James testified that he shot the gun into the ground twice. He also stated that he "pointed the gun over the top of the car and I motioned for Castor to get out." James denied waving the gun or threatening to kill either Castor or Elaine.

## II

In August of 1986, the State charged James Pittman with two counts of assault in the second degree in violation of former RCW 9A.36.020(1)(c). Following a trial in February of 1987, a jury convicted Pittman of both counts.

At the sentencing hearing in April of 1987 the court found that both counts were encompassed in the "same criminal conduct" under RCW 9.94A.400 and *State v. Edwards*, 45 Wn. App. 378, 725 P.2d 442 (1986).[1] Accordingly, the court treated the two convictions as one crime and calculated Pittman's offender score to be 0 with a standard sentencing range of 3 to 9 months. The court sentenced Pittman to an exceptional sentence of 14 months. Pittman appealed to this court.

In *State v. Pittman*, 54 Wn. App. 58, 63, 772 P.2d 516 (1989), this court held that the findings of fact in support of Pittman's exceptional sentence were not substantial and compelling under the Sentencing Reform Act of 1981 (SRA). In addition, this court determined that Pittman's offender score had to be adjusted in light of *State v. Dunaway*, 109 Wn.2d 207, 215, 743 P.2d 1237, 749 P.2d 160 (1987).[2] Accordingly, this court vacated Pittman's exceptional sentence and remanded for sentencing with instructions to the trial court to correct his offender score and impose a new sentence. *Pittman*, 54 Wn. App. at 64–65.

In September of 1989 the sentencing court computed Pittman's offender score to be 2, resulting in a standard sentencing range of 12 to 14 months. The court sentenced Pittman to 14 months.

---

[1]In *Edwards* this court held, in part, that crimes against two victims could constitute the same criminal conduct for sentencing purposes. 45 Wn. App. at 382. In *State v. Dunaway*, 109 Wn.2d 207, 215, 743 P.2d 1237, 749 P.2d 160 (1987), the Washington Supreme Court held that convictions for crimes involving multiple victims must be treated separately, thus overruling that portion of *Edwards* which held to the contrary.

[2]See footnote 1.

## III

On appeal, Pittman contends that the trial court erred in counting his two assault convictions as separate crimes for the purpose of calculating his offender score. He asserts that the crimes encompass the same criminal conduct, thus they should be treated as one crime. Pittman argues first that the *Dunaway* "single victim rule" does not apply. *See* 109 Wn.2d at 215. Alternatively, he argues that even if *Dunaway* does apply, his crimes still encompass the same criminal conduct under the "central victim exception" announced in *State v. Collicott*, 112 Wn.2d 399, 408–09, 771 P.2d 1137 (1989).

In *Dunaway*, the Washington Supreme Court adopted an analysis for determining when crimes "encompass the same criminal conduct" under RCW 9.94A.400(1)(a). The court held that trial courts should focus on the extent to which a defendant's objective criminal intent changed from one crime to the next. *Dunaway*, 109 Wn.2d at 215. The court noted that this analysis will often include the related issues of whether one crime furthered the other and whether the time and place of the two crimes remained the same. *Dunaway*, 109 Wn.2d at 215. However, the court also held that crimes involving multiple victims can never encompass the same criminal conduct and must be treated as separate for purposes of calculating a criminal defendant's offender score. *Dunaway*, 109 Wn.2d at 215.

Pittman asserts that because *Dunaway* interprets the 1984 statute and the 1986 version controls his case, he falls within a "window period": after the *Dunaway* court interpreted the 1984 version of RCW 9.94A.400(1)(a) and before the 1987 amendment.[3] To support his argument, Pittman first relies on the difference between the language of the

---

[3]The *Dunaway* court interpreted the 1984 version of RCW 9.94A.400(1)(a), which stated:

"Except as provided in (b) of this subsection, whenever a person is convicted of two or more offenses, the sentence range for each offense shall be determined by using all other current and prior convictions as criminal history. All sentences so determined shall be served concurrently. Separate crimes encompassing the

1984 and 1986 versions of the statute. He reasons that by changing the phrase "separate crimes" to "current offenses" the Legislature made it clear that the "separateness" of multiple current offenses, *i.e.,* the fact that offenses were not committed on separate days or at separate locations, no longer mattered. Instead, the question was solely whether the offenses encompassed the same criminal conduct. Pittman cites several cases for the proposition that it is a presumption of statutory construction that an amendment which materially changes the text of a statute is intended by the Legislature to alter the law.[4] Second, Pittman relies on the *Dunaway* court's observation that the 1987 amendment was not a clarifying amendment, and its comment that the amendment was consistent with its reasoning, for his contention that the 1984 version of the statute is significantly different from the 1986 version. *See* 109 Wn.2d at 213–14.

We find no evidence to support Pittman's contention that the 1986 amendment constitutes a material change in the 1984 statute. We do not agree that by using the phrase "current offenses," rather than "separate crimes," the Legislature made it clear that the "separateness" of multiple current offenses no longer matters. Nor do we agree that

same criminal conduct shall be counted as one crime in determining criminal history."

Pittman is subject to the 1986 version of the statute, which states:

"Except as provided in (b) of this subsection, whenever a person is to be sentenced for two or more current offenses, the sentence range for each current offense shall be determined by using all other current and prior convictions as if they were prior convictions for the purpose of the offender score: *Provided,* That if the court enters a finding that some or all of the current offenses encompass the same criminal conduct then those current offenses shall be counted as one crime. Sentences imposed under this subsection shall be served concurrently."

In 1987 the Legislature amended the statute again by adding the following definition of the phrase "same criminal conduct": "'Same criminal conduct,' as used in this subsection, means two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim."

[4]Specifically, Pittman relies on *State v. Standifer,* 110 Wn.2d 90, 94, 750 P.2d 258 (1988) and *Strunk v. State Farm Mut. Auto. Ins. Co.,* 90 Wn.2d 210, 214, 580 P.2d 622 (1978).

the *Dunaway* court's observation that its reasoning was consistent with the 1987 amendment conclusively proves that the 1984 and 1986 versions of the statute are significantly different.

Moreover, the *Dunaway* court observed that: "[t]he interpretation of the new statute [the 1986 version] should be no different than that of the old, because the key language remains unchanged. This amendment, therefore, does not affect resolution of the instant cases." 109 Wn.2d at 213 n.3. Pittman contends that this is mere dicta. Although it may be dicta, it nonetheless shows that the court consciously determined that the key language and the import of both versions of the statute were the same. Thus, we conclude that the *Dunaway* court's same victim rule applies to the 1986 version of RCW 9.94A.400.

Pittman next asserts that even if we decide that the same victim rule applies to his crimes, under *Collicott,* we must still conclude that the trial court erred in computing his offender score because only Elaine was a "central victim." In *Collicott,* a plurality held that convictions for first degree rape, first degree burglary, and first degree kidnapping encompassed the same criminal conduct for sentencing purposes.[5] 112 Wn.2d at 404-09. Although the plurality acknowledged that the burglary conviction involved two victims, the owner of a counseling center, and a rape–kidnapping victim inside the center, it reasoned that because the burglary charge focused on the rape and the kidnapping to raise the burglary to first degree, the rape–kidnapping victim was the "central victim." *Collicott,* 112 Wn.2d at 408-09. Thus, the plurality concluded that the issue presented in *Dunaway,* two victims in two separate offenses, was not present.[6] *Collicott,* 112 Wn.2d at 409.

---

[5] Justice Utter wrote for a plurality of four. Justice Dolliver concurred only in the result and four Justices dissented.

[6] In dissent, Justice Durham notes that in *Dunaway* the court gave no indication that only "central victims" count in applying the multiple–victim exception. *Collicott,* 112 Wn.2d at 419 (Durham, J., dissenting). She acknowledges, however,

Pittman contends that similarly here, his crimes involved only one "central victim." He asserts that the facts conclusively establish that he targeted his assault at Elaine because she was the one who had hurt him emotionally. Castor, he claims, was merely a "tangential victim" in the path of his assault.

We note first that, because *Collicott* is a plurality decision, its reasoning is not binding on this court. *See State v. Dunbar*, 59 Wn. App. 447, 453, 798 P.2d 306 (1990); *see also State v. Lessley*, 59 Wn. App. 461, 466 n.4, 798 P.2d 302 (1990). Its precedential value is limited to cases which are squarely on all fours with Collicott's situation. The facts here are not at all the same as those in *Collicott*. Moreover, the record does not support Pittman's assertion that his crimes involved only one central victim. Rather, the evidence indicates that Pittman assaulted both his ex–wife and her male companion. James waved and pointed the gun at both Elaine and Castor and threatened to kill them both. In addition, Castor testified that he was terrified that he and Elaine would be harmed.

Thus, we conclude that the trial court did not abuse its discretion or misapply the law in computing Pittman's offender score. Rather, the trial court correctly determined that, under *Dunaway*, because there were two victims, each of Pittman's convictions count as a separate crime for purposes of calculating his offender score.

## IV

Pittman next contends that the prosecutor's decision to charge him with two counts of assault, while charging another defendant in an unrelated case with one consolidated count, denied him equal protection. Pittman relies primarily on an information filed by the King County Prosecutor's Office against a Carl Helwig. Apparently, in that information the prosecutor alleged that Helwig had assaulted two separate victims and charged him with one

---

that in some cases a victim might be too tangentially involved to be considered. *Collicott*, 112 Wn.2d at 419 (Durham, J., dissenting).

count of second degree assault. Helwig pleaded guilty. Pittman asserts that this illustrates prosecutors' unfettered discretion to control criminal defendants' offender scores by indiscriminately choosing the number of counts to charge.

To support his argument, Pittman cites a number of cases in which courts struck down statutes which proscribed different degrees of punishment for the same act committed under the same circumstances by persons in like situations.[7] Here, we do not have a statute which treats similarly situated persons differently.

■■ It is well settled that prosecutors are vested with wide discretion in determining whether to charge suspects with criminal offenses. *State v. Entz,* 58 Wn. App. 112, 119, 791 P.2d 269 (1990). Further,

> [t]he exercise of a prosecutor's discretion by charging some but not others guilty of the same crime does not violate the equal protection clause of U.S. Const. amend. 14 or Const. art. 1, § 12 so long as the selection was not "deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification."

*State v. Judge,* 100 Wn.2d 706, 713, 675 P.2d 219 (1984) (quoting *Oyler v. Boles,* 368 U.S. 448, 456, 7 L. Ed. 2d 446, 82 S. Ct. 501 (1962)). Pittman has not established that prosecutors employ arbitrary classifications in deciding the number of counts to charge. Instead, he has shown only that the prosecutor's office treated one other defendant in an unrelated case differently than him. This does not amount to a denial of Pittman's right to equal protection.

Affirmed.

GROSSE, A.C.J., and WINSOR, J., concur.

Review denied at 116 Wn.2d 1020 (1991).

---

[7]Specifically, Pittman relies on *Olsen v. Delmore,* 48 Wn.2d 545, 550, 295 P.2d 324 (1956) and *State v. Zornes,* 78 Wn.2d 9, 475 P.2d 109 (1970).