[No. 24247–4–I. Division One. May 13, 1991.]

THE STATE OF WASHINGTON, *Respondent,* v. JOHN
RAY STEARNS, *Appellant.*

*Marcus Lampson* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Timothy Blood, Deputy,* for respondent.

BAKER, J.—John Ray Stearns was convicted of second degree attempted rape and first degree robbery. He appeals his robbery conviction, alleging that the trial court erred in (1) denying his motion to dismiss; and (2) improperly instructing the jury in a manner he claims was a comment on the evidence. He further assigns error to the trial court's failure to treat the two convictions as encompassing the same criminal conduct for sentencing purposes. We affirm.

## I
### FACTS

While walking alone to her home from a bus stop after dark, Diana Hoyt was suddenly struck from behind. A lengthy struggle ensued while the assailant attempted to rape Ms. Hoyt. During the initial struggle, she dropped her briefcase in the street. The assailant did not grab it. Later the strap of her purse came loose and the purse fell from her shoulder. The assailant made no attempt to take it. Some minutes later she told the assailant that she had dropped her purse behind somewhere. He did not respond.

At no time did the assailant demand any money or property from her. She was wearing five gold earrings, three gold rings, and a gold necklace. The jewelry was in view because she was not wearing gloves and her coat was open. She did not have the impression that he intended to rob her. But for the force of the attack, however, she would not have dropped her briefcase and purse.

As the struggle continued, the assailant forced Ms. Hoyt to move with him approximately 1½ blocks toward a deserted park area. Then another man appeared and said to her assailant, "'Johnny, let her go, it's not worth it'". The assailant objected that "[s]he owes me" and told the other man not to intervene, but eventually did release his hold. Ms. Hoyt then ran to a nearby convenience store, where the police were called.

Stearns, who matched the broadcast description of the attacker, was arrested in the parking lot outside the convenience store within minutes. The victim's address book and business card case were found in his pocket. Most of the rest of her belongings were found scattered near the location of the original attack. The recovered items included a cigarette case, a wallet, $40 cash, some house keys, a checkbook, and a coin purse.

The defendant's relative, Robert Stearns, was in the parking lot prior to the arrest. An officer testified that Robert stated he had stopped the defendant "before he could do anything.'"

After the State rested, Stearns moved to dismiss the robbery count, arguing that the State had not presented sufficient evidence from which a reasonable inference could be drawn of the necessary intent element. The motion was denied. After the jury returned a verdict of guilty on both counts, Stearns moved for arrest of judgment or in the alternative for a new trial, renewing his insufficient evidence argument and further arguing that the trial court had erred in giving an instruction relating to the removal of the victim from the place where the taking had occurred by the use of force or fear. The motion was denied. Stearns was sentenced to concurrent terms on the two convictions.

## II
### SUFFICIENCY OF THE EVIDENCE

Stearns was convicted of first degree robbery under RCW 9A.56.190 and .200. Robbery is defined in RCW 9A.56.190:

> A person commits robbery when he unlawfully takes personal property from the person of another or in his presence against his will by the use or threatened use of immediate force, violence, or fear of injury to that person or his property or the person or property of anyone. Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking; in either of which cases the degree of force is immaterial. Such taking constitutes robbery whenever it appears that, although the taking was fully completed without the knowledge of the person from whom taken, such knowledge was prevented by the use of force or fear.

RCW 9A.56.200 sets forth the additional elements of robbery in the first degree:

> (1) A person is guilty of robbery in the first degree if in the commission of a robbery or of immediate flight therefrom, he:
>
> . . . .
>
> (c) Inflicts bodily injury.

The jury was instructed on the elements of the crime utilizing the language set forth in WPIC 37.02.[1]

---

[1]Instruction 16 provides:

"To convict the defendant John Ray Stearns, of the crime of robbery in the first degree, as charged in count II, each of the following elements of the crime must be proved beyond a reasonable doubt:

Stearns contends the evidence was insufficient to prove either (1) that the taking was from Ms. Hoyt's person or in her presence or (2) that he used force against her with the intent of obtaining her property, overcoming her resistance to the taking of her property, or preventing her knowledge of the taking. Stearns argues that the undisputed evidence that he ignored the briefcase and purse during the attack, made no effort to take the jewelry, failed to retrieve the cash and checkbook, never demanded property of any kind, and gave Ms. Hoyt no impression that he intended to rob her, provides clear evidence that he did not use force in connection with an intent to rob.

In reviewing the sufficiency of evidence in a criminal matter, the critical inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" (Italics omitted.) *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980). Circumstantial evidence is not to be considered any less reliable than direct evidence, and specific criminal intent may be inferred where a defendant's conduct plainly indicates the requisite intent as a matter of logical probability. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99

---

"(1) That on or about the 3rd day of January, 1989, the defendant unlawfully took personal property from the person or in the presence of Diana Hoyt;

"(2) That the defendant intended to commit theft of the property;

"(3) That the taking was against the person's will by the defendant's use or threatened use of immediate force, violence or fear of injury to that person;

"(4) That the force or fear was used by the defendant to obtain or retain possession of the property or to prevent or overcome resistance to the taking or to prevent knowledge of the taking;

"(5) That in the commission of these acts or in immediate flight therefrom the defendant John Ray Stearns inflicted bodily injury upon Diana Hoyt; and

"(6) That the acts occurred in King County, Washington.

"If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty as to count II.

"On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty as to count II."

(1980) (circumstantial evidence used to establish intent element in attempted first degree theft); *State v. White,* 4 Wn. App. 668, 670, 483 P.2d 867 (intent to deprive of property may be inferred by substantial evidence of conduct, even though no demand was made for money or anything of value), *review denied,* 79 Wn.2d 1006 (1971).

Further, a taking of personal property can occur in the presence of the victim even though the victim was not immediately present where that victim, "by force or fear, had been removed from or prevented from approaching the place from which the asportation of the personalty occurred."[2] *State v. Blewitt,* 37 Wn. App. 397, 398–99, 680 P.2d 457 (1984) (quoting *State v. McDonald,* 74 Wn.2d 141, 144, 443 P.2d 651 (1968)), *review denied,* 103 Wn.2d 1017 (1985).

A trier of fact certainly could have agreed with Stearns that the evidence did not show the use of force in connection with an intent to rob. However, that is not our standard of review. Viewing the evidence most favorably toward the prosecution, a rational trier of fact could have found that the force Stearns was using caused his victim to abandon her property and to leave the vicinity of her abandoned property. A logical inference from the evidence is that immediately upon the thwarting of his criminal plan to sexually assault his victim, Stearns returned to the abandoned belongings and rifled through them, taking possession of the business card case and address book. The speed with which he accomplished this—the arrest procedure began 4 minutes after the emergency call—provides circumstantial evidence from which it can logically be inferred that although his primary intent was rape, he had formed a secondary intent to take property from her at some point before the assault terminated.

---

[2]Instruction 19, discussed *infra* at 230–32, was derived from this language. *See State v. Blewitt,* 37 Wn. App. 397, 398, 680 P.2d 457 (1984), *review denied,* 103 Wn.2d 1017 (1985).

Viewing the facts in this manner, a rational trier of fact could have found beyond a reasonable doubt that the taking occurred "in the presence" of Ms. Hoyt, since she had been removed and prevented from approaching the place of the taking by the force and fear imposed by Stearns; that Stearns had an intent to permanently deprive her of her property at the time he used force against her; and that one of his purposes in using the force was to obtain her property.

Under this analysis, it does not matter that the items taken may have had little monetary value. Indeed, Stearns does not contest that the items taken constituted "property" within the meaning of the robbery statute.

If Stearns had ceased his attempt to rape in the immediate vicinity of the dislodged property, and taken some of it after the victim fled from the scene, he would certainly be guilty of robbery. The mere fact that he managed to drag the victim for approximately 1½ blocks before she escaped provides no meaningful difference sufficient to support the argument that the taking no longer constituted robbery.

## III
### INSTRUCTIONAL ERROR CLAIM

Stearns next contends that the trial court erred in giving the following instruction:

Instruction 19

A taking from the presence of another can occur in the presence of a person, even though that person was not immediately present, where that person, by force or fear, had been removed from or prevented from approaching the place from which the taking occurred.

Stearns contends that the giving of this instruction was a comment on the evidence, arguing that the instruction assumes that the force and fear used by Stearns was *for the purpose* of taking her property outside her immediate, physical presence. Thus, argues Stearns, the instruction assumed facts which were not supported by the evidence, relieving the State of its burden of proof, and expressing an

opinion on the sufficiency and credibility of the evidence. We disagree.

 Const. art. 4, § 16 prohibits a judge from conveying to the jury his or her personal belief in the merits of a case. *State v. Hughes,* 106 Wn.2d 176, 193, 721 P.2d 902 (1986). The purpose of the constitutional provision is to prevent the jury from being influenced by the court's expression of its opinion of the evidence submitted. *State v. Swan,* 114 Wn.2d 613, 657, 790 P.2d 610 (1990), *cert. denied,* ___ U.S. ___, 112 L. Ed. 2d 772, 111 S. Ct. 752 (1991). Thus, the prohibition forbids only those words or actions having the effect of conveying to the jury the trial court's view of the credibility, weight or sufficiency of the evidence. *State v. Eisner,* 95 Wn.2d 458, 461–62, 626 P.2d 10 (1981). The determination of whether a comment is improper depends on the facts and circumstances of each case. *State v. Painter,* 27 Wn. App. 708, 714, 620 P.2d 1001 (1980), *review denied,* 95 Wn.2d 1008 (1981). An instruction does not impermissibly comment on the evidence when there is sufficient evidence in the record to support it and it is an accurate statement of the law. *State v. Hughes,* 106 Wn.2d at 193.

The language of this instruction has been viewed as an accurate statement of the law in other cases. *See State v. Blewitt,* 37 Wn. App. at 398–99. It was derived from *State v. McDonald,* 74 Wn.2d 141, 443 P.2d 651 (1968), which stated that the principle was explicit in the robbery statute where it states that " '[s]uch taking constitutes robbery whenever it appears that, although the taking was fully completed without the knowledge of the person from whom taken, such knowledge was prevented by the use of force or fear.'" *McDonald,* 74 Wn.2d at 144–45 (quoting predecessor statute, identical to RCW 9A.56.190 in this respect).

Stearns attempts to distinguish *McDonald* and *Blewitt* by arguing that in those two cases the removal of the victims was accomplished with the intent of facilitating the taking outside their presence. Here, Stearns argues, the evidence demonstrated no such intent, and thus allowed

the jury to conclude that a taking can be considered a robbery whenever a person is prevented through force or fear of being immediately present at the place of the taking, *for whatever reason.*

Stearns misconstrues the language of instruction 19. It is simply a definition of "in the presence". Thus, it is merely an elaboration of the first element set forth in instruction 16, that Stearns "unlawfully took personal property from the person or *in the presence* of Diana Hoyt". (Italics ours.) The challenged instruction simply allowed the State to argue its theory that the robbery was committed "in the presence" of Ms. Hoyt because Stearns removed her by force and fear from the location of the taking.

Instruction 19 did not relieve the State of proving the other elements set forth in instruction 16: that the defendant acted with intent to commit theft, that the taking was against the victim's will by the use or threatened use of force, violence or fear of injury, and that the force or fear was used by the defendant to obtain or retain possession of the property or to prevent or overcome resistance to the taking or to prevent knowledge of the taking.

The jury might have concluded, based on instructions 16 and 19, that the taking occurred "in the presence" of Ms. Hoyt by virtue of the fact that she was removed by force or fear from approaching the place where the taking occurred, but that the defendant did *not* employ that force or fear *with the intent* of obtaining possession of her property. That was apparently Stearns' theory; the jury did not adopt it. That the jury did not do so does not transform an accurate statement of the law into a comment on the evidence.

IV

SAME CRIMINAL CONDUCT

Finally, Stearns contends that this court should remand his case for resentencing because his two current convictions should be treated as encompassing the same course of criminal conduct. Under RCW 9.94A.400(1)(a), if a court finds that all of the current offenses encompass the same

criminal conduct, then those current offenses shall be counted as one crime, thereby decreasing a defendant's offender score.

■■ In reviewing matters within the guidelines of the Washington Sentencing Reform Act of 1981 (SRA), an appellate court will not reverse a decision of the trial court unless it finds a clear abuse of discretion or misapplication of the law. *State v. Burns*, 114 Wn.2d 314, 317, 788 P.2d 531 (1990) (citing *State v. Collicott*, 112 Wn.2d 399, 404, 771 P.2d 1137 (1989)). Similar deference is to be given to a trial court's determination of what constitutes the same criminal conduct when assessing an appropriate offender score. *Burns*, 114 Wn.2d at 317; *State v. Elliott*, 114 Wn.2d 6, 17, 785 P.2d 440, *cert. denied*, ___ U.S. ___, 112 L. Ed. 2d 80, 111 S. Ct. 110 (1990).

> [I]n deciding if crimes encompassed the same criminal conduct, trial courts should focus on the extent to which the criminal intent, as objectively viewed, changed from one crime to the next. As it did in [*State v.*] *Edwards,* [45 Wn. App. 378, 725 P.2d 442 (1986)] part of this analysis will often include the related issues of whether one crime furthered the other and if the time and place of the two crimes remained the same.

*Burns*, 114 Wn.2d at 319 (quoting *State v. Dunaway*, 109 Wn.2d 207, 215, 743 P.2d 1237, 749 P.2d 160 (1987)).[3] This common law test was codified in a 1987 amendment to the SRA. *State v. Lewis*, 115 Wn.2d 294, 302, 797 P.2d 1141 (1990). The new language defines "'[s]ame criminal conduct" as "two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim." RCW 9.94A.400(1)(a).

Stearns argues that the only conceivable interpretation of the evidence as sufficient to sustain both convictions is that he intended to rape the victim and thereby induce fear in her such that she would not return to retrieve her dropped

---

[3]*Dunaway* interpreted the 1984 version of RCW 9.94A.400(1)(a), but the court observed that the interpretation of a 1986 revision should be the same. *See State v. Pittman*, 59 Wn. App. 825, 830–31, 801 P.2d 999 (1990). The 1987 amendment is described above. Revisions were also made in 1988 that are of no effect here.

belongings, which he could then take. However, this argument mistakenly focuses on subjective intent, rather than the objective intent test set forth in *Dunaway*. "[A]n objective, theoretical inquiry avoids fact–specific speculation about what the defendant in a given case actually intended in his or her actions." *State v. Collicott*, 112 Wn.2d at 405.[4]

This court has recently held that the objective intent of rape and robbery are distinct. *State v. Briggs*, 55 Wn. App. 44, 68, 776 P.2d 1347 (1989). There, even though the two offenses may have been committed at the same time and place, we held that neither offense was committed in furtherance of the other, and therefore that the trial court did not err by considering them to be separate crimes. *Briggs*, 55 Wn. App. at 69.

Similarly, in this case, although the attempted rape and the robbery may have been committed at the same time and place, it does not appear that either offense furthered the other. The fact that the defendant may have possessed more than one criminal intent in forcing the victim a distance of approximately 1½ blocks does not affect this conclusion. The objective intent behind robbery is to acquire property, *Dunaway*, 109 Wn.2d at 216; RCW 9A.56.190, while the objective intent of rape in the second degree is to engage in sexual intercourse. RCW 9A.44.050. Accordingly, the trial court did not err by viewing these as separate crimes.

Affirmed.

SCHOLFIELD and AGID, JJ., concur.

Review granted at 117 Wn.2d 1001 (1991).

---

[4]We recognize that because *Collicott* was a plurality opinion, its reasoning is not binding on this court. *See Pittman*, 59 Wn. App. at 832. On this point, however, *Collicott* is consistent with *Dunaway*.