# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  48354-8-II |
| Respondent, | |
| v. | |
| JEREMY LEE KEITH, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, J. — Jeremy L. Keith appeals his jury trial conviction for first degree robbery. Keith argues that there is insufficient evidence of a robbery from the presence of the victim, Jacob Wise, and that Keith's counsel rendered ineffective assistance when he stipulated that Keith could pay a discretionary legal financial obligation (LFO). Keith additionally requests that we decline to impose appellate costs. Because there is sufficient evidence to support Keith's first degree robbery conviction and Keith's counsel did not render deficient performance, we affirm Keith's conviction and sentence. Further, we decline to impose appellate costs against Keith.

FACTS

I.  BACKGROUND FACTS

In August 2015, Keith, Wise's ex-girlfriend McKenzie Pierce, and Aaron Fisher entered Wise's apartment, ostensibly to remove Pierce's belongings after she and Wise had broken up. Wise's roommate, Trevor Muir, was not present at the time. Keith "tased" Wise and forced him

into the bathroom. 1 Report of Proceedings (RP) at 21. While Wise was in the bathroom, Muir's safe was taken from Muir's bedroom closet.

Police arrested Keith, Pierce, and Fisher. Keith was charged with first degree robbery, accomplished by the unlawful taking of personal property from Wise's person or presence. On an indigency screening form, Keith indicated that he received food stamps and that he had a job as a handyman painter, from which he earned $80 to $100 weekly. Keith worked as often as he could find handyman jobs. Keith disclosed also that he supported his three children and paid $300 monthly for court-ordered fines. Based on this information, the trial court determined that Keith was eligible for a court-appointed trial attorney at no expense.

## II. KEITH'S TRIAL

Keith's trial began in November 2015. Keith did not testify or present any witnesses in his defense.

### A. WISE'S TESTIMONY

Wise testified that he lived in a two-bedroom apartment with Muir, one of his best friends. Muir typically kept his bedroom door locked, although Muir left the door unlocked on the day of the robbery. That morning, Wise had gone into Muir's bedroom to speak with Muir and had seen that the safe was still there.

For a few months, Wise's then-girlfriend, Pierce, lived in the apartment until she and Wise broke up and Muir asked Pierce to leave. On the day of the robbery, Wise gathered Pierce's belongings, and she returned to collect them. Accompanying Pierce were Keith and Fisher; Muir was not home at the time.

A small stun gun belonging to Muir was on the kitchen counter. After Pierce's belongings had been removed, Keith "tased" Wise and, with Fisher's assistance, forced Wise into his bathroom. 1 RP at 21. Keith and Fisher pushed Wise down and held the door shut from the outside while Wise attempted to escape. Fisher told Wise to stay in the bathroom or he would be "socked in the face," and Wise ceased his attempts to escape. 1 RP at 24. After Keith and the others left, Wise let himself out from the bathroom. Wise saw that his roommate's safe had been taken and called 911.

### B. MUIR'S TESTIMONY

Muir testified that he kept an approximately two-foot-square safe in his bedroom closet. Muir also kept his bedroom door locked because "things kept coming up missing"; Muir eventually "kicked out" Pierce when Muir caught her stealing from him. 1 RP at 69, 77. After Pierce moved out, Muir left his bedroom door unlocked, including on the day of the robbery, because "the problem had been solved." 1 RP at 78.

### C. POLICE TESTIMONY

Police officers testified that they apprehended Pierce, Fisher, and Keith, who was painting someone's home at the time of his arrest. The officer who arrested Pierce found Muir's stun gun inside her purse.

### D. JURY INSTRUCTIONS AND VERDICT

The trial court instructed the jury that to find Keith guilty of first degree robbery, the State had to prove elements including that "the defendant unlawfully took personal property from the

person, or in the presence, of another." Clerk's Papers (CP) at 74. Over Keith's objection,[1] the instructions included that "[a] taking from the presence of another can occur . . . even though that person was not immediately present, where that person, by force or fear, had been removed from or prevented from approaching the place from which the taking occurred." CP at 75. The jury instructions did not specify the safe as the property taken. The jury found Keith guilty of first degree robbery.

## III. LFOs and Sentencing

At sentencing, the prosecutor pointed out that Keith was a former corrections officer, apparently able-bodied, who had "thr[own] away his career . . . for drugs." CP at 85. Defense counsel sought a bottom range sentence[2] and requested sentencing leniency based on Keith's employment as a painter and having several children. Defense counsel stipulated that Keith "c[ould] pay the financial obligations" because Keith worked as a painter and had in fact been working when police apprehended him. 3 RP at 178. Keith did not state otherwise, although the trial court asked if Keith had anything to say.

Finding that Keith "has/will have the ability to pay restitution and [LFOs] in the future," the trial court imposed $2,525 in LFOs, including, as the only discretionary LFO, $1,725 for attorney fees. CP at 94. The trial court sentenced Keith to 60 months imprisonment.

---

[1] Keith sought to have the jury instructed regarding a lesser-included offense and objected to the presence instruction on the basis that the evidence did not show a taking from Wise's person or presence. Keith asserted that Wise could have left the bathroom at any time and that at most, the offense was a simple theft because property was taken from someone else in a different room. We note that Keith does not challenge the jury instruction on appeal.

[2] Keith's standard range sentence was 51 to 68 months.

Keith moved for appointed appellate counsel and claimed that he had no savings and was unemployed. The trial court entered an order of indigency that authorized Keith to appeal at public expense.

## ANALYSIS

### I. SUFFICIENCY OF THE EVIDENCE

Keith challenges the sufficiency of the evidence that the stolen safe was in Wise's presence to uphold Keith's first degree robbery conviction. The State responds that there was a robbery because the safe was in Wise's presence.[3] We agree with the State.

### A. STANDARD OF REVIEW AND LEGAL PRINCIPLES

When we review sufficiency of the evidence challenges, we determine whether the evidence, viewed in the light most favorable to the State, is such that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Sweany*, 174 Wn.2d 909, 914, 281 P.3d 305 (2012) (quoting *State v. Randhawa*, 133 Wn.2d 67, 73, 941 P.2d 661 (1997)).

A robbery occurs when a person

unlawfully takes personal property from the person of another *or in his or her presence* against his or her will by the use or threatened use of immediate force, violence, or fear of injury to that person or his or her property or the person or property of anyone.

RCW 9A.56.190 (emphasis added).

---

[3] In the alternative, the State argues that Keith's taking the stun gun alone is enough to support a first degree robbery conviction. Because we hold that there was sufficient evidence that the safe was in Wise's presence, we do not reach this argument.

The presence requirement generally means that the thing taken must have been within the victim's "'reach, inspection, observation[,] or control'" such that the victim could, "'if not overcome with violence or prevented by fear, retain his possession of it.'" *State v. Manchester*, 57 Wn. App. 765, 768, 790 P.2d 217 (1990) (quoting 4 C. TORCIA, WHARTON'S CRIMINAL LAW, § 473 (14th ed. 1981)). A taking is from a victim's person or presence, even if "the victim was not immediately present," if the victim "'by force or fear, had been removed from or prevented from approaching the place from which the asportation of the personalty occurred.'" *State v. Stearns*, 61 Wn. App. 224, 229, 810 P.2d 41 (1991) (quoting *State v. Blewitt*, 37 Wn. App. 397, 398-99, 680 P.2d 457 (1984)).

## B. SUFFICIENT EVIDENCE OF PRESENCE

Keith argues that there is insufficient evidence that he took personal property from the person or presence of another because the stolen safe was never in Wise's presence.[4] We disagree.

Here, Wise testified that Keith "tased" Wise and forced him into a bathroom. 1 RP at 21. Keith and Fisher then held the door shut, despite Wise's attempts to escape. And Wise ceased his attempts to escape because Fisher said that he would "sock[ Wise] in the face" if he did not remain in the bathroom. 1 RP at 24. From this testimony, a rational trier of fact would have found beyond a reasonable doubt that Wise, by force or fear, had been removed from or prevented from

---

[4] Keith also briefly argues, as grounds for distinguishing *Stearns*, that the stolen safe was not in Wise's "actual possession" because it was in Muir's bedroom closet. Br. of Appellant at 12. This argument has no merit. A victim's possession of the stolen property *or* "ownership or representative interest" in the property is an essential element of a robbery. *State v. Tvedt*, 153 Wn.2d 705, 714, 103 P.3d 728 (2005). While Wise did not possess his roommate's safe, a rational trier of fact could have found beyond a reasonable doubt that Wise had a representative capacity with regard to Muir's safe in Muir's absence.

approaching the place where the property was taken. *See Stearns*, 61 Wn. App. at 229. Accordingly, we hold that there is sufficient evidence that the taking was from Wise's person or presence to support Keith's first degree robbery conviction.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Keith argues that defense counsel provided ineffective assistance when he stipulated at the sentencing hearing that Keith had sufficient resources to pay any discretionary LFOs.[5] We disagree.

### A. STANDARD OF REVIEW AND LEGAL PRINCIPLES

Whether there was ineffective assistance of counsel is a mixed question of fact and law that we review de novo. *State v. Jones*, 183 Wn.2d 327, 338, 352 P.3d 776 (2015). The defendant must show that his counsel's representation fell below an objective standard of reasonableness and that the deficient performance prejudiced the defendant. *Jones*, 183 Wn.2d at 339 (quoting *State v. Benn*, 120 Wn.2d 631, 663, 845 P.2d 289 (1993)). We need not address both prongs of the test if the defendant's showing on one prong is insufficient. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

Under RCW 10.01.160(3), the sentencing court "shall not order a defendant to pay costs unless the defendant is or will be able to pay them," and the sentencing court shall take into account the defendant's financial resources and the nature of the burden imposed by the payment of costs.

---

[5] The State argues that because "there was no objection" below, Keith waived the LFO challenge, and we should not allow Keith to bypass his waiver by arguing ineffective assistance of counsel. Br. of Resp't at 9. Because we hold that Keith's counsel did not render deficient performance, we do not address this issue.

## B. DEFICIENT PERFORMANCE

Keith argues that his counsel rendered deficient performance when he stipulated that Keith could pay discretionary LFOs because Keith did not have the present or future ability to pay and because his counsel had no tactical reason to take this position. Keith's argument fails.

Legitimate trial tactics or strategy do not constitute deficient performance and cannot form the basis for an ineffective assistance of counsel claim. *In re Pers. Restraint of Cross*, 180 Wn.2d 664, 694, 709, 327 P.3d 660 (2014). There is a strong presumption that counsel's performance was reasonable because of the deference we afford to defense counsel's decisions. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011) (quoting *Kyllo*, 166 Wn.2d at 862). A defendant rebuts this presumption if he shows the absence of any conceivable legitimate tactical reason for the performance. *Grier*, 171 Wn.2d at 42 (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)).

At sentencing, defense counsel sought sentencing leniency because Keith was employed and had several children. Defense counsel stipulated that Keith "c[ould] pay the financial obligations" and reasoned that Keith had been working as a house painter, including at the time that police apprehended Keith. 3 RP at 178. Keith did not state otherwise when the trial court asked Keith if he had anything to say. Following defense counsel's stipulation, the sentencing court imposed as a discretionary LFO the cost of Keith's appointed attorney—$1,725—and sentenced Keith to 60 months imprisonment.

Keith's counsel reasonably could have decided to stipulate to Keith's ability to pay because Keith was employed—and in fact at a job—at the time of his arrest and because disputing Keith's ability to pay would have undermined the request for sentencing leniency based on Keith's

8

employment. Because Keith fails to show the absence of any legitimate tactical reason for his counsel's performance, he cannot rebut the presumption that his counsel's performance was reasonable. *See Grier*, 171 Wn.2d at 42. Thus we hold that Keith's counsel did not perform deficiently, and we reject Keith's ineffective assistance of counsel claim.[6]

### III. APPELLATE COSTS

Keith requests that should the State prevail, we decline to impose appellate costs against him. The State argues that this issue is not yet ripe.[7] We disagree with the State and grant Keith's request.

Under RAP 15.2(f), we "give a party the benefits of an order of indigency throughout the review" unless the trial court finds that the party's financial condition has improved. Here, the sentencing court entered an order of indigency. Further, Keith received a 60-month sentence and had earned $80 to $100 weekly, contingent upon his finding painting jobs. Keith claimed that he supported his three children, received food stamps, and paid $300 monthly for court-ordered fines. In light of Keith's indigent status and our presumption under RAP 15.2(f) that Keith remains indigent "throughout the review" unless the trial court finds that his financial condition has improved, we exercise our discretion to waive appellate costs in this matter. RCW 10.73.160(1).

---

[6] Because Keith's counsel did not render deficient performance, Keith's claim of ineffective assistance fails, and we do not reach the question of whether Keith suffered prejudice from the stipulation. *See Kyllo*, 166 Wn.2d at 862.

[7] The issue is ripe because the State substantially prevails and because we have discretion to direct the commissioner not to award costs to the State in our decision terminating review. *See* RAP 14.2.

No. 48354-8-II

We affirm Keith's conviction and sentence and decline to impose appellate costs against him.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, J.

We concur:

WORSWICK, P.J.

SUTTON, J.