[No. 52877–2. En Banc. February 4, 1988.]

WILLIAM ALLINGHAM, ET AL, *Respondents,* v. THE CITY OF SEATTLE, *Appellant.*

*Douglas N. Jewett, City Attorney, Gordon F. Crandall, Senior Assistant,* and *Michael P. Monroe, Assistant,* for appellant.

*Bogle & Gates, Elaine L. Spencer,* and *Richard A. Jones,* for respondents.

Goodloe, J.—A group of landowners seeks to invalidate a Seattle zoning ordinance which requires that a large percentage of certain privately owned lots be retained in or restored to a natural state. The trial court held that sections 23.70.40 and 23.70.50 of Seattle Ordinance 111568 (the Greenbelt Ordinance) constituted a taking of property without just compensation and that therefore the ordinance was invalid as a zoning regulation. The City of Seattle appealed directly to this court. We affirm.

The Greenbelt Ordinance was enacted on February 27, 1984, and regulates development in 14 designated greenbelt areas located throughout the city of Seattle. The ordinance affects approximately 900 acres of land, about half of which is privately owned. The designated greenbelts are primarily linear bands of undeveloped, treed hillsides. The fact that many of these hillsides are steep is one of the reasons these areas have not yet been developed.

The Greenbelt Ordinance creates an "overlay zone", superimposed upon the existing or underlying zoning regulations. The underlying zones affected include single–family residential zones, three levels of multi–family residential zones, and manufacturing and industrial zones. The underlying zones regulate the types of uses to which the land may be put, while the Greenbelt Ordinance reserves percentages of the land for "greenbelt preserve[s]" and "restored greenbelt preserve[s]". Sections 23.70.50 and 23.70.60.

The Greenbelt Ordinance requires that an owner of a residential lot 5,000 square feet or larger must reserve 50 percent of the lot in an undisturbed state called a greenbelt preserve, and replant an additional 20 percent of the lot to create a restored greenbelt preserve. Lots smaller than 5,000 square feet have a smaller greenbelt preserve percentage requirement, with the smallest percentage requirement being 30 percent reserved for a greenbelt preserve and 20 percent for a restored greenbelt preserve from residential lots of 3,000 square feet or less. Owners of lots within underlying zones specified as manufacturing, general industrial, or heavy industrial must reserve 40 percent of the lot area for a greenbelt preserve and 10 percent for a restored greenbelt preserve. Lots which are only partially within the designated greenbelt zone must reserve greenbelt preserves and restored greenbelt preserves calculated upon that portion of the lot which is within the greenbelt zone. The ordinance sets forth criteria for determining the specific locations of greenbelt preserves and restored greenbelt preserves, primarily to ensure the contiguity of the total greenbelt areas reserved out of lots under various owner-

ship.

Under certain strictly defined circumstances, the placement of greenbelt preserves and restored greenbelt preserves may be other than that specified in the ordinance, and under even more closely defined circumstances the areas reserved for greenbelt preserves and restored greenbelt preserves may each be reduced by 10 percent of the total lot.

The plaintiffs commenced this action shortly after the Greenbelt Ordinance was passed, seeking to have the ordinance declared invalid as a taking of private property in violation of the due process and equal protection requirements of the state and federal constitutions. The City moved for summary judgment on the ground that the plaintiffs failed to exhaust their administrative remedies; the motion was denied. The case was tried on December 5, 1985. The trial court found that the effect of sections 23.70.40 and 23.70.50 of the ordinance was to take the property of the greenbelt owners without compensation and that therefore those sections of the ordinance were invalid use of the police power under the Washington State Constitution.

By post–trial motion the plaintiffs sought recovery of their attorney fees and costs pursuant to 42 U.S.C. § 1988 (1982) or the private attorney general doctrine. The trial court did not award attorney fees. The case is before this court on direct appeal.

I

The City argues that the landowners should be required to exhaust their administrative remedies by submitting development plans or seeking variances from the requirements of the Greenbelt Ordinance.

■ Generally, plaintiffs have no standing to seek declaratory and injunctive relief against a zoning ordinance until they have exhausted their administrative remedies. *Ackerley Communications, Inc. v. Seattle*, 92 Wn.2d 905, 602 P.2d 1177 (1979), *cert. denied*, 449 U.S. 804 (1980);

*Lange v. Woodway,* 79 Wn.2d 45, 483 P.2d 116 (1971). The rationale for this rule is that often a variance or other administrative remedy can alleviate the hardship the zoning ordinance would have created for the plaintiff, thereby making a challenge to the ordinance unnecessary. *Lange,* at 48. Exhaustion of administrative remedies is not required where such exhaustion would be a futile gesture. *Orion Corp. v. State,* 103 Wn.2d 441, 693 P.2d 1369 (1985). As stated in *Ackerley*:

> We recognize that where no administrative remedy is available, or where such remedy is patently inadequate, a party may be allowed to raise constitutional issues in a declaratory judgment proceeding without being required to exhaust administrative channels needlessly or to the party's injury.

*Ackerley,* at 909.

The present case is one in which the available administrative remedies are patently inadequate to relieve the hardship imposed by the ordinance. The Greenbelt Ordinance sets out specific circumstances under which variances may be granted and strictly limits the scope of the variances. For example, under section 23.70.50 the location of the greenbelt preserve may be other than that generally required by the ordinance if such a location would further the intent of the Urban Greenbelt Plan. Under section 23.70.70, if the location, contiguity and area requirements of the ordinance result in a building footprint of less than 25 percent of the lot, a variance may be granted to allow a 25 percent building footprint to be maintained. However, this provision may not be used to reduce the total greenbelt preserve by more than 10 percent of the lot size. Section 23.70.60 allows the size of the restored greenbelt preserve to be reduced by up to 10 percent of the total lot size, again only under certain unusual circumstances. In sum, even if a property owner were to seek and be granted all available variance remedies, the Greenbelt Ordinance would still deny the owner use of 40 to 50 percent of the property. The available administrative remedies, while available to reduce

the most severe hardships created by the ordinance, are clearly inadequate to alleviate the basic hardship created by requiring a large percentage of these lots to be left in a natural state. Thus, we hold that exhaustion of these administrative remedies would be futile and as such is not required before resort to judicial review of the ordinance.

## II

The central issue in this case is whether the Greenbelt Ordinance constitutes a taking of private property without just compensation in violation of Washington's Const. art. 1, § 16 and the fifth amendment to the United States Constitution. We hold that it does. A zoning ordinance constitutes a taking of private property where it (1) does not substantially promote legitimate public interests, *or* (2) deprives the owner of any profitable use of the land. *Agins v. Tiburon,* 447 U.S. 255, 260–61, 65 L. Ed. 2d 106, 100 S. Ct. 2138 (1980); *Carlson v. Bellevue,* 73 Wn.2d 41, 51, 435 P.2d 957 (1968).

We recognize that the Greenbelt Ordinance advances numerous legitimate public interests. As stated in the ordinance, it was intended to provide buffers between incompatible land uses, mitigate the effects of noise and air pollution, limit development of environmentally sensitive areas unsuitable for building, maintain habitat for wildlife, and relieve the monotony of continuous urban development. Section 23.70.10. All of these are legitimate public interests.

■ We find, however, that the ordinance deprives certain landowners of all profitable use of a substantial portion of their land. Under the ordinance, 50 to 70 percent of certain lots must be preserved in or returned to a natural state. The owner of a lot located within a greenbelt zone cannot make any profitable use of that portion of his land required to be reserved under the ordinance: he cannot build a home on it, drive his vehicles across it, or cut down the trees and plant a garden on it. Although he still holds title to the property reserved as greenbelt land, he is denied

the control over his property typically accorded landowners. We deem this to be a taking.

The City argues that the Greenbelt Ordinance is a legitimate zoning regulation because even if 70 percent of a lot must be left in its natural state, the remaining 30 percent may be put to profitable use, and therefore the owner has not been deprived of *all* profitable use of his property. According to this argument, the City should be allowed to regulate away all rights of ownership to a portion of a person's property, so long as some part of the property remains usable. We find this argument unpersuasive. If the City were to take a portion of certain properties for the purpose of building a road, clearly we would hold that the City must pay for the land so taken. Likewise where, as here, the City takes a portion of certain properties for the purpose of preserving greenbelts, the City must pay for the land taken. To permit the City to accomplish the same purpose under the guise of a zoning regulation would be inequitable and would constitute an unconstitutional taking of private property without just compensation. We therefore hold that the Greenbelt Ordinance is invalid.[1]

### III

Plaintiffs argue that they are entitled to recover their reasonable attorney fees and costs under either the private attorney general doctrine or 42 U.S.C. § 1988 (1982).

This court rejected the private attorney general doctrine in *Blue Sky Advocates v. State,* 107 Wn.2d 112, 727 P.2d 644 (1986). We decline to reconsider that decision at this time.

This court is not at liberty to grant attorney fees under 42 U.S.C. § 1988 (1982) for a 42 U.S.C. § 1983 (1982) action in a case such as this. The United States Supreme

---

[1]The remedy we grant of invalidation of the ordinance is a remedy consistent with the denial of substantive due process. *Orion Corp. v. State,* 109 Wn.2d 621, 747 P.2d 1062 (1987). Overly severe landowner regulations have previously resulted in our labeling those actions as "takings." *Granat v. Keasler,* 99 Wn.2d 564, 663 P.2d 830 (1983).

Court has declared that a section 1983 claim for violation of the Fifth Amendment prohibition against taking private property without just compensation is not ripe until the claimant has sought and been denied just compensation. *Williamson Cy. Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194–95, 87 L. Ed. 2d 126, 105 S. Ct. 3108 (1985). The plaintiffs in this case have not sought damages for the taking of their property. Instead, they chose to challenge the validity of the ordinance as a zoning regulation. Had the plaintiffs sought compensation for the taking of their property even as an alternative remedy in the present action, they would have exhausted the procedures available under Washington law for obtaining just compensation. In such a case a section 1983 action would have been ripe and may have supported a claim for attorney fees and costs. Since plaintiffs made no such claim for compensation, we must deny their request for attorney fees and costs under section 1988.

The Greenbelt Ordinance is invalid as a zoning regulation. Attorney fees and costs are denied. The judgment of the trial court is affirmed.

PEARSON, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DORE, CALLOW, and DURHAM, JJ., concur.

Reconsideration denied July 15, 1988.