20 P.3d 1069 (2001)
105 Wash.App. 762
STATE of Washington, Respondent,
v.
Marco Perez GARNICA aka Marco Anthony Perez Garnica, Appellant.
No. 19085-4-III.
Court of Appeals of Washington, Division 3, Panel Five.
April 10, 2001.
*1071 Robert E. Schiffner, Moses Lake, for Appellant.
John D. Knodell, III, Ephrata, for Respondent.
*1070 BROWN, J.
After Marco Garnica pleaded guilty to two counts of third degree rape, the sentencing court, citing five aggravating factors including domestic violence, gave consecutive sentences despite deciding the crimes comprised the same criminal conduct. Mr. Garnica appealed his exceptional sentence. We decide as an issue of first impression that a minor nonresident sister-in-law is not a "family member" for exceptional sentencing purposes, but we affirm because the four other aggravating factors are valid.

FACTS
Marco Garnica challenges his consecutive sentence imposed under exceptional circumstances. The facts are drawn from the unchallenged findings. The victim is Mr. Garnica's 15-year-old sister-in-law. The crimes occurred as Mr. Garnica, at the request of his wife, was driving the victim to her boyfriend's house. Mr. Garnica stopped the car and began touching the victim in a sexual fashion. The victim resisted. The struggle spilled onto the ground outside the car. Mr. Garnica attempted to remove the victim's clothing. He grabbed the victim from behind and twisted her neck and demanded she expose her breasts or he would kill her. The victim complied.
Mr. Garnica then forced the victim to her knees and demanded she perform oral sex on him. He threatened that he could break her neck and kill her if she did not comply. Mr. Garnica then placed his penis in the victim's mouth and ejaculated. Mr. Garnica then pulled the victim up and pushed her face down onto the hood of his car. He pulled down her pants and entered her vagina from behind with his penis. He again ejaculated. Mr. Garnica allowed the victim to dress and told her he was going to kill her anyway. The victim begged for her life. Mr. Garnica relented.
Upon discovery, the State charged Mr. Garnica with two counts of second degree rape. After plea negotiations, Mr. Garnica pleaded guilty to reduced charges of two third degree rapes. The plea agreement indicated a standard range of 41 to 54 months. The State reserved its sentencing recommendation.
Although the trial court stated reservations, Mr. Garnica ultimately persuaded the court to treat the crimes as the same criminal conduct for sentencing. The court then calculated Mr. Garnica's offender score as three with a standard range of 15 to 20 months. However, the court imposed an exceptional *1072 sentence consisting of two consecutive 20-month sentences. Specifically, the sentencing court cited the aggravating factors of deliberate cruelty, multiple incidents of abuse of a single victim, abuse of trust, domestic violence, and a standard range sentence too lenient as a result of the multiple offense provisions of RCW 9.94A.400.
Mr. Garnica then filed this appeal. The State did not cross-appeal the sentencing court's decision that the two rapes comprised the same criminal conduct.

ISSUE
The sole issue is whether the sentencing court erred by imposing an aggravated exceptional sentence consisting of two consecutive standard-range sentences and concluding that the facts supported legally sufficient aggravating factors. Although the State seems to argue the trial court erred when deciding the crimes constituted the same criminal conduct, we do not address that issue because the State did not preserve the issue by cross-appeal. Moreover, given that the facts arguably support either theory, the sentencing court did not abuse its discretion in finding the rapes constituted the same criminal conduct. See State v. Grantham, 84 Wash.App. 854, 862, 932 P.2d 657 (1997) (Morgan, J., concurring.)

ANALYSIS
Substantial and compelling reasons set forth in written findings and conclusions must support imposition of an exceptional sentence. State v. Halgren, 137 Wash.2d 340, 345, 971 P.2d 512 (1999) (citing RCW 9.94A.120(2)). On review we ask "(1) whether there is sufficient evidence in the record to support the reasons for imposing an exceptional sentence under a clearly erroneous standard, (2) whether as a matter of law the reasons justify an exceptional sentence, and (3) whether an exceptional sentence is clearly excessive under an abuse of discretion standard." Halgren, 137 Wash.2d at 345-46, 971 P.2d 512 (citing RCW 9.94A.210(4); State v. Nordby, 106 Wash.2d 514, 723 P.2d 1117 (1986)).
Mr. Garnica's arguments are directed solely to the first inquiry, "that [the] facts do not support the court's conclusions." State v. Serrano, 95 Wash.App. 700, 712, 977 P.2d 47 (1999). "The `clearly erroneous' standard of review applies." Id. With regard to the facts, Mr. Garnica has not assigned error to the sentencing court's findings of fact, which renders them verities on appeal. State v. Hill, 123 Wash.2d 641, 647, 870 P.2d 313 (1994); State v. Herzog, 69 Wash.App. 521, 526, 849 P.2d 1235 (1993).
Here, Mr. Garnica was convicted of two third degree rapes, class C felonies under the Washington Criminal Code. RCW 9A.44.060. Rape Three is a non-violent sex offense under the Sentencing Reform Act of 1981(SRA). RCW 9.94A.030.28, .37(a)(I).
The Presentence Investigation Report (PSI) shows Mr. Garnica had three prior adult felonies. The prior offenses yield one point each on the offender score for a cumulative score of three. Rape Three carries a seriousness level of V on the SRA sentencing grid. RCW 9.94A.310(1), .320. If the two rapes were scored separately, the total offender score would be six, yielding a standard range of 41 to 54 months. RCW 9.94A.360, .400. But because the court determined the rapes encompassed the same criminal conduct, they were treated as one crime, yielding an offender score of three. Id. The standard range thus became 15 to 20 months on each count, ordinarily imposed concurrently. RCW 9.94A.310(1), .400(1)(a).
But a trial court can sentence consecutively under RCW 9.94A.400(1) provided aggravating factors justify imposition of an exceptional sentence. State v. Worl, 91 Wash.App. 88, 94-95, 955 P.2d 814 (1998). Here, the court listed five aggravating factors justifying an exceptional sentence consisting of two consecutive standard-range sentences.
Conclusion of Law No. 1 states: "The defendant's conduct manifested deliberate cruelty to the victim, threatening to kill the victim not only to compel her compliance with his demands, but also after she had been forced to comply." Clerk's Papers (CP) at 94. An exceptional sentence may be justified if the defendant's conduct "`manifested deliberate cruelty to the victim.'" Serrano, *1073 95 Wash.App. at 712, 977 P.2d 47 (quoting RCW 9.94A.390(2)(a)). "`Deliberate cruelty consists of gratuitous violence, or other conduct which inflicts physical, psychological or emotional pain as an end in itself.'" Serrano, 95 Wash.App. at 712-13, 977 P.2d 47 (quoting State v. Strauss, 54 Wash.App. 408, 418, 773 P.2d 898 (1989)). The cruelty must be beyond that normally associated with commission of the charged offense. Serrano, 95 Wash.App. at 713, 977 P.2d 47. And the defendant's conduct must be "atypical" of the charged crime. State v. Delarosa-Flores, 59 Wash.App. 514, 518, 799 P.2d 736 (1990).
Particularly violent and degrading treatment of a rape victim, such as multiple penetrations, blows to the head, and verbal humiliation, show "callous disregard" for the victim constituting deliberately cruel conduct. State v. Cannon, 130 Wash.2d 313, 333, 922 P.2d 1293 (1996); see also Herzog, 69 Wash. App. at 526, 849 P.2d 1235 (multiple penetrations); Delarosa-Flores, 59 Wash.App. at 519, 799 P.2d 736 ("combination of threats of injury or death, multiple penetrations, and repeated name calling" may justify exceptional sentence); State v. Falling, 50 Wash. App. 47, 55, 747 P.2d 1119 (1987) (threats to injure or kill victim, two penetrations, and contempt for victim demonstrated by name calling are each factors manifesting deliberate cruelty to rape victim).
Division One of this court held that multiple penetrations alone constituted deliberate cruelty. Herzog, 69 Wash.App. at 527, 849 P.2d 1235. The Herzog court reasoned that "multiple sexual acts over a period of time are more degrading and have a more serious impact on the victim than a single act of rape." Id. The Herzog court specifically disagreed with this court's reasoning in Delarosa-Flores. Id. In Delarosa-Flores, the perpetrator penetrated the victim three times, slapped her on the leg more than once resulting in bruises, and called her "stupid lady" during the rapes. Delarosa-Flores, 59 Wash.App. at 518-19, 799 P.2d 736. This court stated, "[a]lthough this physical and emotional trauma was gratuitous, it was not significantly more serious or egregious than is typical of the crimes." Id. at 519, 799 P.2d 736. This court also distinguished the case factually from Falling, 50 Wash.App. at 55, 747 P.2d 1119, "which considered a combination of threats of injury or death, multiple penetrations, and repeated name calling." Delarosa-Flores, 59 Wash.App. at 519, 799 P.2d 736.
Here, Mr. Garnica twisted the victim's neck and threatened to break it and kill her if she failed to comply. He then forced his penis into her mouth until he ejaculated. He then forced the victim to lie face down on the hood of his car and raped her vaginally until he ejaculated again. Even though the victim complied, Mr. Garnica stated his intent to kill her anyway. He did not relent until the victim begged for her own life.
The combination of multiple penetrations, positioning of the victim across the hood of the car, and the threats to kill her is conduct significantly more egregious and well beyond the force and violence typically associated with third degree rape. Falling, 50 Wash. App. at 55, 747 P.2d 1119. And, the victim's begging for mercy further illustrates the terrifying effects of Mr. Garnica's death threats. Accordingly, the trial court correctly concluded the facts constituted deliberately cruel conduct. Cannon, 130 Wash.2d at 333, 922 P.2d 1293.
The sentencing court's Conclusion of Law No. 2 states: "The current offenses involved multiple incidents of abuse of a single victim." CP at 94. The SRA's aggravating factors include multiple incidents against the same victim. RCW 9.94A.390(2)(d)(i); see also State v. Vaughn, 83 Wash.App. 669, 677, 924 P.2d 27 (1996). "Although the statute refers to multiple incidents only in the context of major economic offenses, ... they can also justify an exceptional sentence in other contexts." Id. (citing State v. Dunaway, 109 Wash.2d 207, 219, 743 P.2d 1237 (1987), 749 P.2d 160 (1988)). "Multiple acts in themselves establish a greater level of culpability than is contemplated by the Legislature in establishing the punishment for a crime that can be committed by a single act." Vaughn, 83 Wash.App. at 677, 924 P.2d 27. "In addition, multiple acts prolong the period of danger and degradation endured by the victim." Id. at 677-78, 924 *1074 P.2d 27. "As such, they may constitute deliberate cruelty in and of themselves." Id. at 678, 924 P.2d 27 (citing Herzog, 69 Wash. App. at 527, 849 P.2d 1235).
Here, the record does not specify the total time span for the two rapes. However, Mr. Garnica raped the victim twice in two distinct ways with sufficient time to ejaculate each time. The repositioning of the victim and subsequent rape on the car hood lengthened the trauma and degradation endured by the victim. The victim's impact statement indicates a lingering fear "somebody is going to get me from behind." Clerk's Papers at 22. These facts support a finding that the multiple penetrations constituted an aggravating factor. Vaughn, 83 Wash.App. at 678, 924 P.2d 27.
Conclusion of Law No. 3 states: "The defendant used his position of trust, confidence or fiduciary responsibility to facilitate the commission of the current offense." CP at 94. RCW 9.94A.390(2)(d)(iv) states that circumstances where the "defendant used his or her position of trust, confidence, or fiduciary responsibility to facilitate the commission of the current offense" constitute an aggravating factor. See State v. Grewe, 117 Wash.2d 211, 214, 813 P.2d 1238 (1991). As noted earlier, this aggravating factor may apply in other contexts even if the crime was not a major economic offense. See Vaughn, 83 Wash.App. at 677, 924 P.2d 27 (discussing multiple acts aggravating factor).
"When analyzing abuse of trust, the focus is on the defendant." State v. Bedker, 74 Wash.App. 87, 95, 871 P.2d 673 (1994). "The inquiry is whether the defendant was in a position of trust, and further whether this position of trust was used to facilitate the commission of the offense." Id. A family relationship between the victim and the perpetrator will establish a position of trust. Id. at 95-96, 871 P.2d 673.
Here, Mr. Garnica is the victim's brother-in-law, a family relationship through marriage. The victim was a child. At the request of his wife, Mr. Garnica was in the process of driving the victim when he suddenly turned on her. Mr. Garnica was "someone the victim should have been able to trust." Id. at 96, 871 P.2d 673. The sentencing court did not err in finding that the trust had been abused. Id.
Conclusion of Law No. 4 states: "The current offenses involved domestic violence, and the offender's conduct during the commission of the current offenses manifested deliberate cruelty or intimidation of the victim." CP at 94. Mr. Garnica contends the trial court erred in finding this aggravating factor because the victim was not a "family or household" member as defined under the domestic violence statute for purposes of an aggravating factor. This appears to be an issue of first impression.
RCW 9.94A.390(2)(h) provides in relevant part that an act of domestic violence, as defined by RCW 10.99.020, can be an aggravating factor provided "[t]he offender's conduct during the commission of the current offense manifested deliberate cruelty or intimidation of the victim." RCW 9.94A.390(2)(h)(iii). As noted earlier, Mr. Garnica manifested deliberate cruelty to the victim. Thus, the determinative inquiry is whether the crime constituted an act of "domestic violence."
This unique issue turns on the correct interpretation of chapter 10.99 RCW. The standard of review is de novo. State v. Azpitarte, 140 Wash.2d 138, 140-41, 995 P.2d 31 (2000). Absent ambiguity, this court relies on the plain language of the statute to derive its meaning. Id. at 142, 995 P.2d 31. A "domestic violence" crime is one committed "by one family or household member against another[.]" RCW 10.99.020(3). Hence, the threshold question is whether this crime involved one "family or household member" and another.
RCW 10.99.020(1) states:
"Family or household members" means spouses, former spouses, persons who have a child in common regardless of whether they have been married or have lived together at any time, adult persons related by blood or marriage, adult persons who are presently residing together or who have resided together in the past, persons sixteen years of age or older who are presently residing together or who have *1075 resided together in the past and who have or have had a dating relationship, persons sixteen years of age or older with whom a person sixteen years of age or older has or has had a dating relationship, and persons who have a biological or legal parent-child relationship, including stepparents and stepchildren and grandparents and grandchildren.
By its plain terms, the statutory definition of "[f]amily or household members" would apply here if both Mr. Garnica and his victim were "adult persons related by blood or marriage." RCW 10.99.020(1). But Mr. Garnica's victim was not an adult. No provision in the plain language of RCW 10.99.020(1) encompasses the adult-to-child relation by marriage between Mr. Garnica and his sister-in-law; hence, they are not mutually family or household members under the statute. Therefore, the rape was not an act of domestic violence because the crime was not "committed by one family or household member against another[.]" RCW 10.99.020(3). Because the crime was not an act of domestic violence, this aggravating factor does not apply. Accordingly, "[t]he sentencing court's reliance on this factor was clearly erroneous." State v. Serrano, 95 Wash.App. 700, 712, 977 P.2d 47 (1999).
Conclusion of Law No. 5 provides that the operation of the multiple offense policy, which resulted in both rapes being counted as one offense, resulted in a sentence "that is clearly too lenient in light of the purposes of chapter 9.94A RCW." CP at 94. The court reasoned the multiple offense policy resulted in the second rape going essentially unpunished.
The SRA authorizes the sentencing court to impose an aggravated sentence if the "operation of the multiple offense policy of RCW 9.94A.400 results in a presumptive sentence that is clearly too lenient in light of the purpose of this chapter, as expressed in RCW 9.94A.010." RCW 9.94A.390(2)(i). A stated purpose of the SRA is to "[e]nsure that the punishment for a criminal offense is proportionate to the seriousness of the offense and offender's criminal history." RCW 9.94A.010(1).
A factor the sentencing court may consider in applying this aggravating factor is "the desire to prevent the use of the multiple offense policy to impose a sentence within the sentencing range that awards the defendant `free' crimes." State v. Brown, 91 Wash.App. 361, 366, 957 P.2d 272 (1998), review denied, 137 Wash.2d 1002, 972 P.2d 465 (1999). Even if the defendant does not receive a "free crime," the sentencing court can apply this aggravating factor if it finds the multiple offense policy would result in too lenient a sentence in light of the SRA's stated purpose of ensuring proportionate punishment and protection for the public. State v. Wilson, 96 Wash.App. 382, 392-93, 980 P.2d 244 (1999), review denied, 139 Wash.2d 1018, 994 P.2d 846 (2000).
Here, if the rapes were scored separately, Mr. Garnica's offender score would have been six, which would have resulted in a standard range of 41 to 54 months. By counting the rapes as one crime, pursuant to RCW 9.94A.400, his score became three, which yielded a standard range of 15 to 20 months. This is a gap of 21 months between the high end of the three-point range and the low end of the six-point range. In other words, for sentencing purposes, it is as if the second rape never occurred. Accordingly, the sentencing court did not err in imposing the "clearly too lenient" aggravating factor.
In sum, four of five aggravating factors were validly applied and any one of them would have justified an exceptional sentence. See Vaughn, 83 Wash.App. at 675, 924 P.2d 27. The trial court did not specify in either its written conclusions of law or in its oral opinion that any fewer than the enumerated aggravating factors justified the exceptional sentence of 40 months. State v. Morris, 87 Wash.App. 654, 670, 943 P.2d 329 (1997). But, upon examining the entire sentencing record, it is clear the sentencing court would have imposed the same sentence on the basis of the remaining valid aggravating factors. Vaughn, 83 Wash.App. at 675, 924 P.2d 27; see also State v. Worl, 91 Wash. App. 88, 94, 955 P.2d 814 (1998) (reasoning *1076 from review of record that sentencing court would have imposed same exceptional sentence even if it had miscalculated offender score).

CONCLUSION
We hold the trial court did not err when finding four of the five aggravating factors supported Mr. Garnica's exceptional sentence.
Affirmed.
KURTZ, C.J., and SCHULTHEIS, J., concur.